**UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| AMERICAN CENTER FOR EXCELLENCE IN SURGICAL ASSISTING INC., Plaintiff, | ) | |
| v. | ) | Case No. 15 CV 7290 |
| COMMUNITY COLLEGE DISTRICT 502, COLLEGE OF DUPAGE, DR. THOMAS CAMERON, DR. KAREN M. SOLT, and DR. KATHY CABAI, Defendants. | ) | Judge Gary Feinerman |

**Community College District 502 and College of DuPage's**
**Answer and Affirmative Defenses to Plaintiff's Complaint**

Defendants Community College District 502 and College of DuPage ("COD"), by their attorneys, Schuyler, Roche & Crisham, P.C., submit their Answer to Plaintiff American Center for Excellence in Surgical Assisting Inc.'s Complaint (the "Complaint").

**ANSWER**

1. Plaintiff ACE is a Colorado corporation with its principal place of business in Colorado.

**ANSWER: COD denies the allegations contained in Paragraph 1 of the Complaint because it lacks knowledge.**

2. Defendant District is one of the community college districts created by the Illinois Community College Act, 11 ILCS 850, et seq. which divides the State of Illinois into 39 public community college districts, each having its own Board of Trustees. The Act states that ". . .the board of each community college is a body politic and corporate by the name 'Board of Trustees of Community College District. . .' and by that name may sue and be sued in all courts and places where judicial proceedings are had. . . .". The District is located in Glen Ellyn, Illinois.

**ANSWER: COD admits the allegations of the first and second sentences of Paragraph 2 of the Complaint. COD denies the third sentence of Paragraph 2 of the Complaint.**

3. Defendant COD is a community college located in Glen Ellyn, Illinois and is the community college created for District 502.

**ANSWER: COD admits the allegations contained in Paragraph 3 of the Complaint.**

4. Defendant Cameron is the Dean of Health and Sciences Division of COD.

**ANSWER: COD admits the allegations contained in Paragraph 4 of the Complaint.**

5. Defendant Solt is Associate Dean of Health and Sciences Division of COD.

**ANSWER: COD denies the allegations contained in Paragraph 5.**

6. Defendant Cabai is the Program Director, Health and Science Center at COD.

**ANSWER: COD denies the allegations contained in Paragraph 6.**

7. This Court has subject-matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1), because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

**ANSWER: COD denies the allegation that the matter in controversy exceeds the sum or value of $75,000. COD denies the allegation that the matter in controversy is between citizens of different states because it lacks knowledge.**

8. No Plaintiff is a citizen of the same state as any Defendant.

**ANSWER: COD denies the allegations contained in Paragraph 8 of the Complaint because it lacks knowledge.**

9. This Court has personal jurisdiction over Defendants pursuant to ILCS 5/2-209, because Defendants have transacted business within Illinois and entered into contracts substantially connected to Illinois, including the contract that is the subject of this lawsuit.

**ANSWER: COD admits that the Court has personal jurisdiction over Defendants, but denies the allegation that Defendants entered into a contract that is the subject of this lawsuit.**

10. Venue is proper in this district under 28 U.S.C. §§ 1391(a) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this district, Defendants are subject to personal jurisdiction in this district.

**ANSWER: COD admits the allegations contained in Paragraph 10 of the Complaint.**

11. This case arises out of an attempt by COD by and through Cameron, Solt and

Cabai to provide a Surgical Assistant Program (the "Program") to qualified prospective students that would be approved and accredited by the American Board of Surgical Assistants (ABSA) in conjunction with ACE who has an ABSA approved Program with a curriculum (distance-learning, hands-on lab, and clinical internship) and the expertise required to operate and maintain the Program. Ace's duties were to provide COD with an ABSA approved, distance-learning Surgical Assistant Program, provide documentation needed for the students to progress through the Program, provide presentation materials for the Program and provide a member of the ACE staff to coordinate this program with a designated member of the COD staff. COD's duties were to receive and process applications for admission, maintain student records and transcripts, grant certificates or degrees documenting satisfactory completion of the educational program; collect tuition and fees from all students; provide, classroom space for the Program; designate a qualified member of COD Faculty to be Program Director to coordinate local activities of the Program; secure and maintain contractual relationships with the appropriate number of hospitals and surgicenters to allow all enrolled students to obtain and complete the required clinical experience to successfully complete the Program; collect student surveys with sufficient information to assess the Program; and pay any and all initial Program approval/accreditation application and maintenance fees and all associated expenses related to approval/accreditation. Because COD did not have the Program, they relied exclusively on ACE to help them build the Program. ACE fulfilled all its duties by providing the course and the curriculum, as well as a copy of a Self Study proposal. However, after 10 months of collaboration, COD abruptly terminated the relationship with ACE and instituted its own Program using the materials that ACE provided to them.

**ANSWER: COD admits that ACE believes that this case arises from an attempt by COD to provide a Surgical Assistant Program (the "Program") to qualified prospective students that would be approved and accredited by the American Board of Surgical Assistants (ABSA) in conjunction with ACE who has an ABSA approved Program with a curriculum (distance-learning, hands-on lab, and clinical internship) and the expertise required to operate and maintain the Program.**

**COD denies the allegations contained in the second and third sentences of Paragraph 11.**

**Answering further, COD admits that it did not have the Program in November 2013, but denies that it relied exclusively on ACE to help build the Program. COD denies the al1egations that ACE fulfilled all its duties by providing the course and the curriculum, as well as a copy of a Self Study proposal. Finally, COD denies the allegations that after 10**

**months of collaboration, COD abruptly terminated the relationship with ACE and instituted its own Program using the materials that ACE provided to them.**

12. An exhaustive collaboration between COD and ACE to initiate COD's Program began in November, 2013. Because COD did not have the expertise to implement the Program, assistance was required.

**ANSWER: COD admits that during the fall 2013 semester, ACE approached COD about forming a partnership to offer a surgical assistant training program. COD denies the allegations that COD did not have the expertise to implement the Program and that assistance was required.**

13. In early November 2013, a meeting was proposed with Cabai, COD and ACE and was scheduled for November 19, 2013. A follow up meeting was held on November 20, 2013 which led to Keith Bump of ACE ("Bump") sending Cabai and Solt a proposal outlining how ACE would implement the Program. See Nov. 21, 2013 email attached as Exhibit A.

**ANSWER: COD denies the allegations contained in the first sentence of Paragraph 13 because it lacks knowledge. COD admits the allegation that a meeting was held on November 20, 2013. COD denies the allegation that the November 20, 2013 meeting led Keith Bump to send Cabai and Solt a proposal because it lacks knowledge. COD denies the allegation that the proposal outlined how ACE would implement the Program.**

14. On December 8, 2013, a Skype meeting was held with Cabai, Solt and Cameron in which Solt affirmed COD was ready ". . .to move forward on our part." See 12/9/13 emails attached as Exhibit B.

**ANSWER: COD admits that on December 8, 2013, a Skype meeting was held with Cabai, Solt and Cameron. COD admits that Solt sent an email which is attached as Exhibit B to the Complaint. COD denies the remaining allegations contained in Paragraph 14 of the Complaint.**

15. On December 12, 2013, Solt informed Bump that COD wanted ACE to use Blackboard to teach the ACE classes remotely. Blackboard is a classroom management system used by COD to teach students remotely. Even though ACE did not own or use that system, they contacted Blackboard to begin ACE's integration with COD's Blackboard. See Ex. C 12-12-13

emails attached.

**ANSWER: COD admits Solt informed Bump that COD wanted ACE to use Blackboard to teach the ACE classes remotely and that Blackboard is a classroom management system used by COD to teach students remotely. COD denies the allegation that ACE did not own or use the Blackboard system or that ACE contacted Blackboard to begin ACE's integration with COD's Blackboard because it lacks knowledge.**

16. As part of the implementation of the Program, Cabai began work on submitting a Form 20 New Curriculum Form to the Illinois Community College Board ("ICCB") in December, 2013. See ICCB Form 20 attached as Ex. D. Cabai used the ACE curriculum to write COD's curriculum and communicated with Bump regarding some of the specifics of the curriculum required for the Program. See Ex. E 12-27-13 emails with curriculum attached.

**ANSWER: COD denies the allegations that Cabai began work on submitting a Form 20 New Curriculum Form to the Illinois Community College Board in December, 2013 because it lacks knowledge. COD denies the allegation that Cabai used the ACE curriculum to write COD's curriculum.**

17. On February 17, 2014, Cabai informed ACE that the curriculum based on the ACE model passed curriculum review. ACE was then invited to come to the Advisory Committee Meeting on March 20, 2014 to present the curriculum and the books to be used to teach the Program. See 2-17-14 emails attached as Exhibit F.

**ANSWER: COD denies the allegations contained in Paragraph 17 of the Complaint.**

18. On February 27, 2014 Cabai requested that Kyle Black with YEHSS - who was assisting ACE with implementing COD's project - help her with the budget for the Program, which included costing per student and cost related to labs required. See 2-27-14 email attached as Exhibit F-1.

**ANSWER: COD admits that on February 27, 2014 Cabai requested that Kyle Black with YEHSS - who was assisting ACE with implementing COD's project - help her with the budget for the Program. COD denies the allegation that the budget included costing per student and cost related to labs required because it lacks knowledge.**

19. On March 13, 2014 Cabai scheduled her attendance for the ACE skill lab in

Denver, Colorado in July 2014 as part of her training to teach the skill lab part of the Program. See Ex. G 3-13-14 email re lab for Cabai.

**ANSWER: COD admits the allegations contained in Paragraph 19 of the Complaint.**

20. On March 17, 2014, Cabai sent an email to Keith Bump stating that ICCB wanted justification for hourly requirements for certain of the curriculum courses. Cabai requested that ACE come up with a statement of justification because the curriculum presented was the ACE curriculum. See Ex. H, 3-17-14 email re ICCB issues.

**ANSWER: COD admits the allegations contained in the first sentence in Paragraph 20 of the Complaint. COD denies the allegations contained in the second sentence in Paragraph 20 of the Complaint.**

21. On April 23, 2014, Cabai informed ACE that the new Program curriculum had been accepted by the ICCB and COD and they were ready to begin the class. See 14-04-23 email from Cabai confirming attached as Exhibit I.

**ANSWER: COD denies the allegations contained in Paragraph 21 of the Complaint.**

22. After being informed that COD would begin the class, Cabai asked ACE to scan its Self-Study (see Ex. J 5-5-14 email from Cabai) prepared by ACE for its successful accreditation with the Commission on Accreditation of Allied Health Professionals (See Ex. K ACE Self Study proposal) that COD could use as a template for accrediting the course ACE would be providing. The Self Study was a rather lengthy document which is highly proprietary in nature and which COD completely lacked any wherewithal to put together without ACE's assistance.

**ANSWER: COD admits that Cabai asked ACE to scan its Self-Study. COD denies the allegation that ACE's Self-Study was accredited with the Commission on Accreditation of Allied Health Professionals and that COD could use as a template for accrediting the course ACE would be providing because it lacks knowledge. COD denies the allegations that the Self Study was a rather lengthy document which was highly proprietary in nature and which COD completely lacked any wherewithal to put together without ACE's assistance.**

23. On May 29, 2014, Solt confirmed that ACE was set up with Blackboard which is required to teach the course. ACE responded that, based on going forward with teaching the Program at COD, Blackboard was scheduled to be installed. Ex. L 5-59-14 email.

**ANSWER: COD denies the allegations contained in Paragraph 23 of the Complaint because it lacks knowledge.**

24. In July, 2014, Cabai attended the Denver lab as planned. Though certain concerns were raised after Cabai attended the lab at ACE, the implementation of Blackboard proceeded at ACE and the concerns were addressed.

**ANSWER: COD admits Cabai attended the Denver lab in July 2014. COD further admits that Cabai raised concerns about the ACE program after Cabai attended the lab at ACE. COD denies the allegation that the implementation of Blackboard proceeded at ACE because it lacks knowledge. COD denies allegations that the concerns that were raised after Cabai attended the lab at ACE were addressed.**

25. On Sept 8, 2014 ACE received an email stating that COD decided not to move forward with this relationship because it was unrealistic that Bump would be ready to teach the course for students starting January 2015. This was the first indication that the Program with ACE was not moving forward. See Ex. M, 8-9-14 email from Solt declining to participate in program.

**ANSWER: COD admits that ACE received an email stating that COD decided not to move forward with this relationship on September 8, 2014. COD denies the allegation that COD decided not to move forward with the relationship because it was unrealistic that Bump would be ready to teach the course by January 2015. COD also denies that the September 8, 2014 email was the first indication that the Program with ACE was not moving forward.**

26. Despite the exhaustive details and applications required to get a course started, in April 2015 COD announced the new Surgical Assistance Course. See Ex. N, College announces new degree.

**ANSWER: COD denies the allegations contained in Paragraph 26 of the Complaint.**

27. In offering the Program, COD published the course requirements in their catalogue. See Ex. O, College Surgical assistant course description. In the course description, COD duplicated the course numbers and course content given to COD by ACE. See Ex. P, ACE course description.

**ANSWER: COD denies the allegations contained in the first sentence of Paragraph 27 of**

**the Complaint. COD denies the allegations that COD duplicated the course numbers because it lacks knowledge. COD denies the allegation that COD duplicated the course content given to COD by ACE.**

28. A Demand and Notice of Claim letter was made by Counsel for ACE on December 23, 2014. See Notice of Claim attached as Ex. Q.

**ANSWER: COD admits the allegations contained in Paragraph 28 of the Complaint.**

29. Counsel for COD responded on March 27, 2015, erroneously refuting many of the facts contained in the Demand letter. See Ex. R., response to notice of claim corresp.

**ANSWER: COD admits that previous counsel for COD responded on March 27, 2015, but denies the remaining allegations contained in Paragraph 29.**

**COUNT I**
**BREACH OF CONTRACT AS TO COLLEGE OF DUPAGE**

30. ACE re-alleges and incorporates by reference each and every allegation set forth in Paragraphs 1-29 above.

**ANSWER: COD incorporates its responses in all previous paragraphs of the Complaint as if fully set forth herein as its answer to Paragraph 30.**

31. Plaintiff and COD entered into a Contract whereby Plaintiff would provide all of the materials and teaching in conjunction with faculty at COD for the Program. This was confirmed in an email from Cabai to ACE on April 23, 2014 attached hereto as Exhibit I.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 31.**

32. ACE performed all their duties under the contract, providing Program materials, instruction on how to staff and run the Program, and providing COD with all the information they needed to have the Program accredited.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 32.**

33. ACE memorialized the terms of the Contract in a Consortium Agreement signed by Dan Bump, which states that ACE was to receive $4,100.00 per student from COD for a period of two years. Consortium Agreement attached as Ex. S.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 33.**

34. COD breached the Contract when they terminated their relationship with ACE on

September 8, 2014.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 34.**

35. ACE suffered damages from COD's breach in an amount equal to two years' lost profits, costs spent on implementing the Program details, plus costs and fees for pursuing this case.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 35.**

**COUNT II**
**UNJUST ENRICHMENT AS TO COLLEGE OF DUPAGE**

**On June 15, 2016, the Court dismissed Count II with prejudice. Accordingly, no answer is required.**

**COUNT III**
**FRAUD AS TO ALL DEFENDANTS**

44. ACE re-alleges and incorporates by reference each and every allegation set forth in Paragraphs 1-43 above.

**ANSWER: COD incorporates its responses in all previous paragraphs of the Complaint as if fully set forth herein as its answer to Paragraph 44.**

45. COD, Cabai, Solt and Cameron (collectively referred to as the "Defendants") initially proposed to ACE that COD would work with ACE based on the Proprietary Information that ACE provided as to how to organize the Program to allow ACE to promote and run the Program at COD.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 45.**

46. As a result of the Defendants' representations that ACE would conduct the Program at COD, ACE provided the Proprietary Information to the Defendants which was then utilized to put together the Program for COD.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 46.**

47. The representations made by Defendants that AE would perform the Program at COD and receive payment on a per student basis were in fact false in that the Defendants could not and did not allow ACE to put on the Program.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 47.**

48. The representations of Defendants were part of a scheme in which they used ACE's knowledge and expertise as well as their Proprietary Information to build their own Surgical Assistant Program that did not include ACE's participation nor would it allow ACE to

receive payment for their efforts in putting together and conducting the Program.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 48.**

49. When the Defendants made the representation about ACE conducting the Program, they knew those representations to be false and had no intention of performing them. This was part of a scheme to defraud ACE into giving Defendants the Proprietary Information without paying for it.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 49.**

50. The representations that ACE would be able to conduct the Program at COD in return for payment on a per student basis were made by Defendants with the intent to defraud and deceive ACE and with the intent to induce ACE to act in the manner herein alleged. This was a scheme to induce ACE to give Defendants the Proprietary Information they needed to produce their own Surgical Assistant Program.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 50.**

51. ACE, at the time these representations were made by Defendants and at the time Plaintiff took the actions herein described, was ignorant of the falsity of Defendants' representations and believed them to be true.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 51.**

52. In reliance on Defendants' representations, ACE provided the Defendants with the Proprietary Information, then executed a new Note calling for $3,000.00 per month payments instead of $5,000.00 per month.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 52.**

53. As a proximate result of Defendants' fraud and deceit and the facts herein alleged, ACE was damaged.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 53.**

**COUNT IV**
**MISAPPROPRIATION OF TRADE SECRETS**
**(Against All Defendants)**

54. ACE re-alleges and incorporates by reference each and every allegation set forth in Paragraphs 1-53 above.

**ANSWER: COD incorporates its responses in all previous paragraphs of the Complaint as if fully set forth herein as its answer to Paragraph 54.**

54. The ACE Proprietary Information constituted trade secrets and confidential

information, as set forth individually and collectively in the preceding paragraphs of the Complaint, and are statutory "trade secrets" protected by the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 54.**

55. At all times, ACE took reasonable measures to protect the ACE Proprietary Information including requesting that COD sign a non-disclosure statement. ACE derives economic value and competitive advantage from such information not being generally known to the public or trade.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 55.**

56. There exists the threatened or actual misappropriation of trade secrets by the Defendants, acting individually and in concert, to acquire, disclose and/or use, by improper means, the ACE Proprietary Information for their own benefit and/or the benefit of others without or exceeding ACE' s authorization and consent.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 56.**

57. ACE sustained and will continue to sustain damages, and Defendants were and will continue to be unjustly enriched in an amount to be proven at trial, as a direct result of Defendants' threatened or actual misappropriation of the ACE Proprietary Information.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 57.**

58. Defendants' threatened or actual misappropriation of the ACE Proprietary Information was willful and malicious and entitles ACE to exemplary damages and an award of attorneys' fees and costs pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 58.**

59. ACE also is entitled to injunctive relief to prevent the threatened or actual misappropriation of the ACE Proprietary Information by Defendants pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*.

**ANSWER: COD denies the allegations and legal conclusions contained in Paragraph 59.**

**COUNT V**
**CONVERSION**

**On June 15, 2016, the Court dismissed Count V with prejudice. Accordingly, no answer is required.**

**COUNT VI**
**PROMISSORY ESTOPPEL**

**On June 15, 2016, the Court dismissed Count VI with prejudice. Accordingly, no answer is**

**required.**

## AFFIRMATIVE DEFENSES

COD hereby submits the following Affirmative Defenses to all the allegations and claims brought by Plaintiff in the Complaint.

### First Affirmative Defense
**(Lack of Mutual Assent)**

COD never assented to the terms of any contract with ACE. Among other things, COD never signed the Consortium Agreement, and expressed concern about the ACE program to ACE prior to September 2014.

### Second Affirmative Defense
**(Failure of Condition Precedent)**

ACE was aware throughout 2013 and 2014 that a condition precedent to any contractual relationship would be that COD found ACE's program to be satisfactory and in the best interests of COD students. Neither of these condition precedents was satisfied.

### Third Affirmative Defense
**(Estoppel)**

Prior to September 2014, COD expressed several concerns to ACE about the capability of the ACE program to meet the needs of COD's students. Accordingly, ACE is estopped from prevailing on a breach of contract.

### Fourth Affirmative Defense
**(Failure of Performance)**

Assuming *arguendo*, a valid contract exists, ACE did not perform its obligations under the contract. Among other things, the ACE program was unsatisfactory to COD and failed to meet the needs of COD's students.

### Fifth Affirmative Defense
**(Preemption)**

ACE's fraud claim is preempted by the Illinois Trade Secrets Act. 765 ILCS 1065/8.

Defendants Community College District 502 and College of DuPage

By: /s/ Michael T. Roche

Daniel V. Kinsella
Michael T. Roche
Schuyler, Roche & Crisham, P.C.
180 N. Stetson Avenue, Suite 3700
Chicago, IL 60601
Tel: (312) 565-2400
dkinsella@srcattorneys.com
mtroche@srcattorneys.com

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the above and foregoing Answer and Affirmative Defenses to ACE's Complaint was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filings, on this 29th day of June 2016, to the following:

Michael J. Davis
BKN Murray LLP
1500 Eisenhower Lane, #800
Lisle, Illinois 60532
mdavis@bknmurray.com

Janice Lynn Driggers
Brian Wright & Associates, P.C.
2777 Finley Road, Suite 12
Downers Grove, IL 60515
(630) 478-9292
janice@wrightandassociateslaw.com

/s/ Michael T. Roche